

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

December 15, 2021

**Via ECF**
The Honorable District Judge John P. Cronan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: **Tellez Garcia, et al. v. Sal 79 Associates, Inc., et al.**
      **19-CV-1301 (JPC)**

Dear Judge Cronan:

Our office represents Julio Tellez Garcia ("Tellez Garcia"), Julio Cesar Garcia ("Cesar Garcia"), Carlos Tapia ("Tapia"), Cesar Tello Vargas ("Vargas"), and Julio Cesar Gandarilla ("Gandarilla") (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for Sal 79 Associates, Inc. d/b/a Coppola's West ("Coppola's West"), Salvatore's Corp. d/b/a Coppola's East ("Coppola's East), Salvatore Coppola ("Coppola"), and Marian Ouatu (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were negotiated over the course of two-and-a-half year of settlement discussions between the parties, including two mediations administered by the SDNY's mediation office and two Settlement Conferences before The Honorable Magistrate Judge Kevin Nathaniel Fox.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms, as well as Plaintiffs' counsel's requested attorneys' fees, and respectfully request that the Court approve the Settlement Agreement and dismiss this case with prejudice.

**I.      The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

    **a. The Settlement Amount**

Plaintiffs and Defendants agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees (which are addressed below), for the amount of $90,000.00 payable pursuant to the payment schedule identified in Paragraph 1 of the Settlement Agreement.

    **b. Plaintiffs' Position**

Plaintiffs brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiffs are five former employees of the Defendants who each alleged that they were employed by one or both of Defendants' Italian restaurants: i) Coppola's West, located at 206 West 79th Street, New York, New York 10024, and ii) Coppola's East, located at 378 3rd Avenue, New York, New York 10016. Plaintiffs also alleged that Defendant Coppola owned and operated both restaurants and was an individual employer under the FLSA and NYLL.

As the lawsuit was filed on February 11, 2019, Plaintiffs asserted claims against the Defendants from February 11, 2013 through the end of their respective employments pursuant to the NYLL's six-year statute of limitations. During the relevant statutory period, Plaintiffs allege, *inter alia*, that: i) they were not paid proper overtime wages when they worked in excess of forty (40) hours per week in violation of the overtime provisions of the FLSA and NYLL; ii) their rates of pay fell below the applicable New York State minimum wage rate; iii) they were not provided an extra hour of pay at the applicable New York State minimum wage rate when required to work in excess of ten hours per shift in violation of the spread of hours provisions of the NYLL; and iv) they were not provided compliant wage notices and wage statements in violation of NYLL § 195.

Plaintiffs allege that they were employed in a variety of positions at the restaurants, including as cooks, food preparers, dishwashers, busboys, and waiters. Plaintiffs also alleged that they were employed for varying time periods within the relevant statutory period, ranging from 11 months to four-and-a-half years. In general, all five Plaintiffs allege that they were required to regularly work in excess of 40 hours per week, ranging from fifty-four (54) to seventy-eight (78) hours per week. Plaintiffs allege that they were either misclassified as salaried employees and were not properly compensated for their overtime hours at time-and-a-half their calculated hourly rates of pay or that they were paid an hourly rate and compensated at the same regular rate of pay for all hours worked, including their hours in excess of forty (40) each week. In addition to the overtime claims, Plaintiff Tapia also alleges that his hourly rate of pay fell below the minimum wage at all times during the relevant statutory period.

Based on the foregoing, Plaintiffs initially claimed close to $300,000.00 in unpaid wages owed to them. However, prior to the mediations and Settlement Conference held in this matter, Defendants produced thousands of pages of relevant time and pay records for four of the five Plaintiffs in this matter and disputed that the fifth Plaintiff, Cesar Garcia, was ever employed by the Defendants.

Plaintiffs' counsel carefully analyzed these records with their clients on multiple occasions during the parties' ongoing negotiations over the last two-and-a-half years. Plaintiffs raised a number of disputes as to the accuracy of the records, including the number of hours worked indicated in the records as well as the amounts of compensation received. Further, Plaintiffs argued that even if Defendants' records were accepted as accurate, they showed that Plaintiffs were not in fact compensated properly for all overtime hours worked during the relevant statutory period. However, Plaintiffs also understood that if these voluminous records were accepted as complete and accurate by a fact-finder, they could drastically reduce their claims to unpaid overtime and minimum wages, potentially to an amount below the agreed-upon settlement amount of $90,000.00. Given the attendant risks of proceeding with litigation and the uncertainty of trial, Plaintiffs favored a guaranteed outcome through settlement rather than the possibility of a lesser recovery in the future. Additionally, Plaintiffs also considered the financial status of the Defendants, based on our office's research into the Defendants' assets, the financial documentation produced by Defendants, and the continuing impact that the Covid-19 pandemic has had on the hospitality industry. All of these factors weighed in favor of accepting the settlement amount as opposed to proceeding to trial.

### c. Defendants' Position

It is the Defendants' position that Plaintiffs' allegations are demonstrably false as Defendants' time and pay records show that Plaintiffs were i) paid hourly in accordance with the FLSA and NYLL; ii) were provided proper weekly pay stubs; iii) did not regularly work shifts that exceed 10 hours; iv) were provided written notice of the tip credit to be applied; and v) aside from Plaintiff Tellez, regularly worked considerably less than the hours alleged. Additionally, Defendants deny that Plaintiff Cesar Garcia ever officially worked for Defendants at any point in the past.. Although Defendants have calculated any potential liability to Plaintiffs at an amount significantly lower than the settlement amount agreed to (as exemplified by the previous FRCP 68 Offers of Judgment Defendants served on Plaintiffs but which were not accepted), given the risks and costs associated with proceeding to trial, on top of the significant costs already incurred by Defendants in litigating this matter through discovery and attending several mediations and settlement conferences, Defendants offered to settle this matter for $90,000.00.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id.* (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema*

*60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $90,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the records and defenses maintained by Defendants in this matter and the factual disputes that remained between the parties and would not have been resolved until the time of trial. Moreover, the settlement amount was only achieved after multiple mediation sessions and two Settlement Conferences before The Hon. Judge Fox. In fact, the total settlement amount of $90,000.00 was agreed to by the parties with the assistance of the Hon. Judge Fox. The parties had genuine, bona fide disputes over the hours worked by Plaintiffs, the dates of Plaintiffs' employment and the pay received by Plaintiffs, but both sides negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount and are satisfied with the result.

## II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement ("Release") is appropriately-tailored to claims under the FLSA and NYLL and their related regulations. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

## III.    Distribution to Plaintiffs and Requested Attorneys' Fees and Expenses

### a.   Distribution to Plaintiffs

The parties agreed to a global settlement of $90,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $59,300.00. Each Plaintiff will receive an amount based on his unpaid wages claim, which factors in the length of his employment within the relevant statutory

period, his alleged number of hours worked each week, and the alleged amount of pay received each week. The allocations among the Plaintiffs also take into account the individual defenses as to each Plaintiff's employment and our office's analysis of Defendants' time and pay records as to each Plaintiff. As such, if the Settlement Agreement is approved, the allocation of settlement funds among the Plaintiffs would be as follows:

| Julio Tellez Garcia | $17,000.00 |
| Julio Cesar Garcia | $17,500.00 |
| Carlos Tapia | $12,000.00 |
| Cesar Tello Vargas | $7,500.00 |
| Julio Cesar Gandarilla | $5,300.00 |

### b. Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $1,050.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $400.00
- the costs of attempted service and proper service of the Summons and Complaint on all Defendants in this matter: $635.00
- postage fees: $15.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($88,950.00), or $29,650.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $30,700.00. The settlement funds broken down into its component parts is as follows:

**Settlement Amount:** $90,000.00
**Attorneys' Expenses:** $1,050.00
**Net Settlement Amount:** $88,950.00 ($90,000.00 - $1,050.00)
**Requested Attorneys' Fees:** $29,650.00 ($88,950.00 / 3)
**Total payable to Attorneys:** $30,700.00 ($29,650.00 + $1,050.00)
**Total payable to Plaintiffs:** $59,300.00 ($90,000.00 - $30,700.00)

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and are signed by the clients. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc*., 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of this matter and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the nearly three-year-long litigation

process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

### IV. Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of both experienced mediators and Settlement Conferences before the Court. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss Plaintiffs' claims against Defendants with prejudice.

We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.